

**SIGNED this 27th day of August, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-12778-CAG |
| | § | |
| RON JOHNSON, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S OBJECTION TO VALUATIONS AND EXEMPTIONS

Before the Court is the Objection to Valuations and Exemptions (the "Objection") filed by Creditor, Leann Collins, on January 6, 2012 in the Debtor's main bankruptcy case (Case No. 11-12778, ECF No. 25). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is deemed a core proceeding under 28 U.S.C. § 157(b)(2)(A) (administration of the estate) and (B) (exemptions from property of the estate). This matter is referred to this Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. A hearing was held on July 3, 2012 to consider the Objection. Having considered the pleadings and the record in this case, for the following reasons, the Court finds that the Objection should be DENIED.

1

**BACKGROUND & PARTIES' CONTENTIONS**

In her Objection, Collins asserts that the Debtor has continued to misrepresent his assets and income and "improperly applied exemptions in an attempt to walk off with TAG magazine, its website, [and] escort business."[1] (ECF No. 25, at 1). Accordingly, Collins requests that the Court "examine the valuations and exemptions claimed by the debtor, Ron Johnson and make a judicial valuation on TAG magazine, its website, the escort business and the sale of the exotic lingerie business." *Id.* at 15. The hearing on July 3, 2012 revealed that the only asset in dispute with regard to the valuation and claimed exemption is Tag Publishing, which includes the related website and printing business.[2]

On The Debtor's Amended Schedules B and C, the intellectual property value for Tag Publishing is reflected at $1,000 with an exemption value of $1,000 (ECF No. 13, at 2-5). Debtor purchased Tag Publishing for $8,800 on February 24, 2005, but asserts that it was only worth that amount because he had been working with the company for six months prior to that date helping to form relationships with advertisers and generate business (ECF No. 39, at 7). Debtor asserts that Tag's only intellectual property value is its "goodwill" value established by Debtor's contributions to the company. *Id.* In his 2004 examination and in his responsive pleadings, Debtor maintains that his main asset is Tag, even with its estimated value of only $1,000 (ECF No. 29, at 7). At the hearing, Debtor's counsel clarified that "the main asset of the business is the income," as opposed to the business itself, because the business itself is not marketable without the Debtor. He argued that no other person could walk into that business, pay money for it, and simply take over the job that the Debtor is doing including, for example,

---

[1] Plaintiff notes that in the event the Trustee sells TAG magazine and its website, Debtor's valuation and application of exemptions may be less of a factor.
[2] Collins offered no proof that Debtor ran an escort business, and her counsel acknowledged that the sale of the lingerie store is documented in a promissory note in Collins' Exhibit No. 12.

the manual labor, the soliciting of advertisements, and the circulation of magazines. He argued that Tag is a "one-man business," and without the Debtor's contributions the business has no value, goodwill or otherwise.

Debtor asserts that the Tag website has no value because it generates no income and is only used to provide Tag magazine subscribers with free online access (ECF No. 38, at 1). The website was built for a total cost of $400. *Id.* Debtor asserts that the printing business is only offered privately to advertisers and that all revenue is included in the reported monthly sales for the Tag business. *Id.* at 4. Debtor asserts that the images used in the magazine have never been sold and that the model releases have no resale or intellectual property value. *Id.* at 5.

In her Objection, Collins asserts that TAG magazine "is estimated to be valued at least in the area of $50,000." (ECF No. 25, at 2.) Collins asserts that Tag has over 48 recurring advertisers with gross monthly income of over $18,000 and that Debtor falsely reported the value of those advertisers and the value of the magazine on his Schedules. *Id.* Collins asserts that the Debtor "has used the bulk of his wildcard exemption on his vehicle, a receivable from advertisers [sic] leaving little for Tag Publishing." (ECF No. 25, at 7.) "Therefore, he squeezes in the exemption into a representation that the business is worth only $1,000 as an intangible." *Id.*

With regard to the Tag website, Collins asserts that the Debtor misrepresents the value, but offers no actual evidence as to the true value of the website. Instead, in Collins's Reply brief, her attorney summarizes his wife's experience with the cost of building websites and draws a comparison between the Tag website and other allegedly similar websites, which Collins's attorney asserts are successful (ECF No. 41, at 2). As the Debtor correctly points out in his Response, "Collins's attorney's personal testimony as to his belief of the website cost or his wife's experience is not admissible evidence." (ECF No. 47, at 1.)

3

In support of her Objection to the valuation of the Tag business, Collins presented an expert opinion from David Sefton in the form of an Affidavit (ECF No. 37-5). In his Affidavit, Sefton testified as to his qualifications as an expert, including his education and experience in accounting (ECF No. 37-5, at 2). According to Sefton, he was a licensed CPA until 2002, at which time he "began performing expert reports in litigation which were not amendable to peer review and therefore were incompatible with the new rule changes in the accounting profession." *Id.* Sefton claims to have performed "no less than 200 forensic accounting reconstructions in [his] 30 year career as well as no less than 100 business valuations." *Id.* Sefton also testified that in his capacity as an expert he reviewed the Debtor's tax returns, "thousands of pages of financial records," and "two legal Lexis reports on Ron Johnson and his business," and "made personal inquiries related to his business including advertisers." *Id.* at 1. Ultimately, Sefton concluded that it is "painfully obvious" that the Debtor is "underreporting income" from the Tag business. *Id.* at 5. In his expert opinion, "Criminals never underreport expenses, they scrupulously always deduct their full expenses and underreport income." *Id.*

In the Affidavit, Sefton makes the following disclosure: "I am not independent in this engagement: my wife is the Plaintiff Creditor. This relationship has not affected my opinion as this opinion is based on information furnished by the Debtor." *Id.* at 2. In his Amended Response, the Debtor objected to the Affidavit, asserting that "any information from Sefton is tainted in that it is based on limited information by an interested party and not the result of an independent audit." (ECF No. 39, at 8.) At the hearing on July 3, 2012, the Debtor did not object to Sefton's testifying as an expert, subject to cross-examination. During the cross-examination, Sefton confirmed, as he had in his Affidavit, that he was the husband of Collins and further admitted that he did not charge Collins anything to appear and testify on her behalf.

4

Sefton further acknowledged that his report and testimony was not considered an independent audit by any standards, including GAAP standards. Rather, he termed it a "forensic reconstruction" by an interested party.

At the hearing, Sefton testified as to the various documents that he reviewed, including the Debtor's Form 1040 for the years 2008, 2009, and 2010, the Debtor's his bank statements, and some of the Debtor's credit card statements (those that were supplied in response to the subpoena). On cross-examination, Sefton testified that he obtained these documents from the initial disclosures provided in the course of discovery in the copyright infringement case filed in the U.S. District Court for the Southern District of Texas (Case No. H-10-2882). Sefton also testified that he attended three depositions and that he spoke with prospective buyers about the value of the Tag business. He testified, without any objection from the Debtor, that one individual told him he would pay $20,000 for the business.

Among his expert findings, Sefton found that the earnings reported on the Debtor's tax returns in 2008, 2009, and 2010 were less than a reasonable living wage in the state of Texas. In addition, on his tax returns the Debtor reported various charges for credit card processing fees for Undercover Style and Tag which, according to Sefton's testimony at the hearing, "when you reverse that number out," would indicate a much higher amount of credit card charges, and thus a much higher income level, than was reported by the Debtor, even taking into account the cash transactions claimed by the Debtor in his depositions.

Sefton testified that he applied the "Cost of Living Standard Method," a method approved by the Internal Revenue Service for the reconstruction an individual's income based on a review of that individual's living expenses. According to Sefton, after adjusting for various personal items such as mileage, living expenses, and "double-dipping of apartment rent" between business

5

and personal expenses, the net cash flow value of the Tag magazine business is about $3,000 to $3,200 per month. After factoring in the prices the Debtor charges his advertisers, according to Debtor's deposition testimony, Sefton reconstructed a net monthly income of $9,600. He noted that this figure roughly coincides with the gross income figure reported on the Debtor's 2010 tax return. On cross-examination, Sefton testified that he reconstructed the income from the credit card processing fees, rather than simply adding up the credit card charges on the statements, because the Debtor failed to provide him with a complete set of credit card statements.

After the cross-examination, the Court requested that Sefton testify specifically as to (1) the true value of the business, and (2) the basis for that conclusion, i.e. whether that was the going concern value, the liquidation value, etc. Sefton responded that if the Debtor was not in bankruptcy and went looking for potential buyers, he thought the value would be somewhere between $35,000 and $50,000. As his basis for that conclusion, Sefton testified that a monthly cash flow of $3,000 to $4,000 could support a sale of $35,000 to $45,000, but that in bankruptcy things are likely to be discounted, so he would guess that it should be able to sell for somewhere between $8,000 and $15,000. The Court clarified that that was simply "an educated guess." Sefton asserted that it was more than simply an educated guess because he talked to someone in the industry who would consider buying it for $20,000.

As far as the relief requested, at the hearing on July 3, 2012, counsel for Collins revealed that she does not want the Court to dismiss the case, and only filed this Objection back in January 2012 mainly in hopes that the Debtor would amend his schedules to correct the valuations. Collins also requested that the Court rule on the § 727 dischargeability action first (which the Court now has), before dismissing the case without prejudice or ordering the Debtor to refile his schedules with amended exemptions. In her Objections to Valuation and

Exemptions, Collins requests that the Court "make a judicial valuation on TAG magazine." (ECF No. 25, at 16.)

## DISCUSSION

Under Bankruptcy Rule 4003, "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003. "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."[3] Fed. R. Bank. P. 4003(c). "If the evidence is such that a decision on a point cannot be made one way or the other, the party with the burden of proof loses." *In re Shurley*, 163 B.R. 286 (Bankr. W.D. Tex. 1993) (quoting *Texas Distribs., Inc. v. Local Union No. 100*, 598 F.2d 393, 402 (5th Cir. 1979)). "To deny a debtor an exemption which is based upon a dollar limitation, the objecting party cannot carry its burden of proof by merely impeaching the Debtors' valuation. Competent evidence, which affirmatively demonstrates a higher valuation by a preponderance of the evidence, is required." *In re Shurley*, 163 B.R. at 291. Pursuant to the exemption provision of the Bankruptcy Code, value "means fair market value as of the date of the filing of the petition. *Id.* at 290 (quoting 11 U.S.C. § 522(a)(2)). "Fair market value has been defined as "the price which a willing seller under no compulsion to sell, and a willing buyer under no compulsion to buy, would agree upon after the property has been exposed to the market for a reasonable amount of time." *Id.* (internal citation omitted).

---

[3] In this case, Debtor elected the state exemptions (ECF No. 37, at 1).

In support of her Objection, Collins relied almost entirely on the opinion testimony of an expert witness who also happens to be Collins's husband, an individual with a direct financial interest in the case. The expert opinion admittedly does not constitute an independent audit by any standards, including GAAP standards. Sefton testified that it is more of a "forensic reconstruction" by an interested party.

Moreover, leaving Sefton's apparent bias aside, his expert findings were largely speculative. Sefton testified that he reviewed the Debtor's credit card processing fees to estimate the Debtor's actual credit card charges because the Debtor failed to provide him with a complete set of credit card statements. Sefton then used his estimate of credit card charges to come up with an estimate of the Debtor's total living expenses. He then used his estimate of the Debtor's total living expenses to generate an estimate of the Debtor's gross income, purportedly using the "cost of living standard method" of income reconstruction. Based on his resulting estimate of the Debtor's income, Sefton then speculated as to what the business would sell for in the current market, taking into account that the Debtor is in bankruptcy and, as a result, "things are likely to be discounted." In particular, Sefton concluded that an estimated monthly cash flow of $3,000 to $4,000 could support a sale of $35,000 to $45,000, but in bankruptcy he would "guess" that it should be able to sell for somewhere between $8,000 and $15,000, according to his testimony at the hearing. When the Court asked Sefton to clarify that his estimate was simply an educated guess, Sefton's only response was that it was more than a guess because he also talked to someone in the industry who would consider buying it for $20,000.

In order to meet her burden on the Objection to Valuations and Exemptions, Collins must present competent evidence that affirmatively demonstrates a fair market value for Tag that is higher than the value claimed by the Debtor, and Collins must demonstrate this value by a

8

preponderance of the evidence. Upon review of the pleadings, the supporting exhibits, and the arguments of counsel at the July 3, 2012 hearing and the testimony presented, for the reasons stated above, the Court finds that Collins has not met that burden.

In sum, while Collins may have presented evidence that tends to indicate that the Debtor's valuation is too low, Collins has not presented sufficient evidence to enable the Court to determine the true fair market value of the Tag business. As previously stated, merely impeaching the Debtor's valuation is not enough. Accordingly, the Court finds that the Objections to Valuations and Exemptions (ECF No. 25) should be denied.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's Objection to Valuations and Exemptions filed by Plaintiff, Leann Collins, on January 6, 2012 in the Debtor's main bankruptcy case (Case No. 11-12778, ECF No. 25) should be DENIED.

IT IS SO ORDERED.

# # #